UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DALLAS OSGOOD,

     Plaintiff,

v.                                     Case No:   2:16-cv-82-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Dallas Osgood's Complaint (Doc. 1) filed on February 1, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for supplemental security income and child's insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

Plaintiff received supplemental security income based on disability as a child.  (*See* Tr. at 77-78).  When Plaintiff reached age 18, the Social Security Administration re-determined Plaintiff's eligibility based on the rules for adults.  (*See* Tr. at 77-78).  The Social Security Administration determined that Plaintiff was no longer disabled as of March 1, 2010.  (Tr. at 77-78).  Plaintiff sought review of that redetermination.  Plaintiff also filed an application for child's insurance benefits.  (Tr. at 184).  After conducting hearings, Administrative Law Judge ("ALJ") M. Dwight Evans issued an unfavorable decision on June 1, 2012.  (Tr. at 79-93).  The Appeals Council vacated and remanded the decision of the ALJ for further review.  (Tr. at 94-97).  On remand, the ALJ conducted an additional hearing.  (Tr. at 488-509).  On September 5, 2014, ALJ Evans issued a new unfavorable decision.  (Tr. at 14-29).  On December 4, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 5-9).

Plaintiff filed a Complaint (Doc. 1) in this Court on February 1, 2016.  Defendant filed an Answer (Doc. 8) on May 12, 2016.  The parties filed Memoranda in support.  (Docs. 14, 18). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 15).  This case is ripe for review.

### C.      Summary of the ALJ's Decision

Section 1614(a)(3)(H) of the Social Security Act provides that individuals who are eligible for supplemental security income benefits under the age of eighteen must have their

disability redetermined under the rules for disability used for adults. *Demps v. Astrue*, No. 3-10-cv-621-J-12MCR, 2011 WL 4530843, at \*3 (M.D. Fla. Aug. 2, 2011), *report and recommendation adopted*, No. 3:10-cv-621-J-12MCR, 2011 WL 4549603 (M.D. Fla. Sept. 29, 2011). Additionally, the Act provides that the medical improvements review standard in section 1614(a)(4) does not apply to disability redeterminations at age 18. *Id.* Instead, the definition of disability that must be applied is the definition used for adults who file new applications for supplemental security income benefits based on disability. *Id.*

Under this standard, an ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

Here, the ALJ first found that Plaintiff "attained age 18 on January 3, 2010, and was eligible for supplemental security income benefits as a child for the month preceding the month

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

in which he attained age 18." (Tr. at 20).  The ALJ found that Plaintiff "was notified that he was found no longer disabled as of March 1, 2010, based on a redetermination of disability under the rules for adults who file new applications." (Tr. at 20).  The ALJ found that Plaintiff had not attained age 22 as of April 4, 2002, the alleged onset date. (Tr. at 20).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4, 2002, the alleged onset date. (Tr. at 20).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  "learning disorder, cognitive disorder, bipolar disorder, attention deficit hyperactivity disorder, disorder of written expression." (Tr. at 20).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526; 20 CFR §§ 416.920(d), 416.925, 416.926). (Tr. at 22).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels." (Tr. at 24).  Nevertheless, the ALJ also included the following nonexertional limitations in Plaintiff's RFC:

> Claimant is limited to work where he is working alone with only occasional supervision.  Claimant is limited to performing simple, routine, repetitive tasks.  Claimant can concentrate and persist with simple instructions for two-hour segments.  Claimant retains ability to adapt to gradual changes in the work setting.  Claimant is able to meet average productions requirements.

(Tr. at 24).

At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 27).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 27).  The ALJ noted that Plaintiff's "ability to perform work at all

exertional levels has been compromised by nonexertional limitations." (Tr. at 28).  To determine

the extent to which Plaintiff's nonexertional limitations erode the occupational base of unskilled

work at all exertional levels, the ALJ asked a vocational expert ("VE") whether jobs exist in the

national economy for an individual with the Plaintiff's age, education, work experience, and

RFC.  (Tr. at 28).  The VE testified that an individual with Plaintiff's age, education, work

experience, and RFC would be able to perform the requirements of representative occupations

such as:

> 1.  Custodian, DOT #381.687-014, which is performed at the medium exertional level, has an SVP of 2, and of which there are 637,814 jobs in the national economy;
>
> 2.  Hand Packager, DOT #920.587-018, which is performed at the medium exertional level, has an SVP of 2, and of which there are 267,893 jobs in the national economy;
>
> 3.  Hand Packer (medical supplies), DOT #712.687-010, which is performed at the light exertional level, has an SVP of 2, and of which there are 378,893 jobs in the national economy.

(Tr. at 28).[2]

The ALJ further stated that "[p]ursuant to SSR 00-4p, the undersigned has determined

that the vocational expert's testimony is consistent with the information contained in the

Dictionary of Occupational Titles." (Tr. at 28).  Based on the testimony of the VE, the ALJ

found that, since March 1, 2010, considering the Plaintiff's age, education, work experience, and

RFC, Plaintiff "is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy." (Tr. at 28).  The ALJ determined, therefore, that a

finding of "not disabled" was appropriate under the framework of section 204.00 in the Medical-

Vocational Guidelines.  (Tr. at 28).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

Accordingly, as to Plaintiff's supplemental security income claim, the ALJ found that Plaintiff's disability ended on March 1, 2010, and that Plaintiff had not become disabled again since that date.  (Tr. at 28).  As to Plaintiff's child's insurance benefits claim, the ALJ found that Plaintiff has not had not been under a disability from April 4, 2002, through the date of this decision.  (Tr. at 28).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     Analysis

On appeal, Plaintiff raises four issues, which are summarized as follows:

(1) Whether the ALJ erred at step five because he refused to allow Plaintiff's representative to cross examine the VE.

(2) Whether substantial evidence supports the ALJ's findings at step five.

(3) Whether substantial evidence supports the ALJ's hearing decision given the lack of specific weight attributed to the 2010 opinions of Dr. Kelly Renzi and Dr. David Rawlings.

(4) Whether substantial evidence supports the ALJ's evaluation of Dr. Rawlings' narrative opinion from 2014.

(Doc. 21 at 2).  The Court addresses these issues below, beginning with the ALJ's review of the medical opinions of record.

### A.     The ALJ's Review of the Medical Opinions of Record

Plaintiff objects to the ALJ's review of two sets of medical opinions:  (1) the 2010 opinions of Dr. Kelly Renzi and Dr. David Rawlings, and (2) the 2014 opinion of Dr. Rawlings.

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  When evaluating a medical opinion, the factors an ALJ must consider include:  (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.*

Further, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). There is no requirement, however, to give deference to the opinion of a non-treating physician. *See Denomme*, 518 F. App'x at 877-78.

Nonetheless, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). Moreover, the Court notes that an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). In those situations, the ALJ's decision will stand. *Id.*

1. *The 2010 opinions of Dr. Kelly Renzi and Dr. David Rawlings*

Plaintiff argues that although the ALJ summarized the 2010 opinions of Dr. Renzi and Dr. Rawlings (collectively, the "2010 opinions"), "the ALJ failed to state the specific weight

afforded their findings." (Doc. 14 at 12 (citing Tr. at 20-21)).  Plaintiff argues that this failure represents a substantial error because these opinions could be outcome-determinative.  (*Id.*).

Defendant disagrees.  (*See* Doc. 18 at 11).  While conceding that the ALJ did not state the specific weight given to the 2010 opinions, Defendant argues that any error here is harmless. (*Id.*).  Defendant points out that the ALJ specifically discussed the 2010 opinions of Dr. Renzi and Dr. Rawlings.  (*Id.*).  Defendant further notes that the opinions are from non-treating physicians, to which no special deference is owed.  (*Id.* at 12 (citing *Denomme*, 518 F. App'x at 878-79)).  Moreover, Defendant argues that the opinions from Dr. Renzi and Dr. Rawlings "do not contradict the ALJ's decision."  (*Id.* at 12 (citations omitted)).  Defendant contends that "substantial evidence supports the ALJ's RFC finding," and, thus, no remand is warranted for the ALJ's failure "to specifically assign weight to opinions that do not conflict with his decision." (*Id.* at 14).

Upon review, the Court agrees with Defendant.  While the ALJ failed to state with particularity the weight given to the 2010 opinions and the reasons therefor, any error here is harmless because there is no indication that a correct application of the regulations would contradict the ALJ's ultimate finding that Plaintiff is not disabled.  *See Denomme*, 518 F. App'x at 877-78.

For instance, in evaluating the IQ scores from the 2010 opinions, Plaintiff points out that Dr. Renzi found that Plaintiff has a full-scale IQ of 61 (Tr. at 314), and that Dr. Rawlings found Plaintiff had a full-scale IQ of 70 (Tr. at 213).  Nevertheless, the ALJ specifically addressed Plaintiff's IQ scores in discussing whether Plaintiff met a Listing.  (Tr. at 24).  The ALJ specifically reviewed Plaintiff's full-scale IQ scores of 61 and 70 from the 2010 opinions, yet credited more recent IQ scores of 71 in November 2011 and 75 in February 2014.  (Tr. at 24).

Given that the ALJ credited later higher IQ scores, it is clear that the ALJ gave the IQ scores from the 2010 opinions less weight. (*See* Tr. at 24). Moreover, the ALJ stated clear reasons for giving the IQ scores from the 2010 opinions less weight. (*See* Tr. at 24). The ALJ found that later IQ scores were more representative and supported by the evidence of record. (Tr. at 24). These conclusions provide substantial evidence in support of the ALJ's findings regarding Plaintiff's IQ scores. Accordingly, the Court finds that Plaintiff has not shown how stating the specific weight given to the 2010 opinions would conflict with the ALJ's ultimate findings as to Plaintiff's IQ scores. *See Denomme*, 518 F. App'x at 877-78.

Similarly, in evaluating the limitations and diagnoses from the 2010 opinions, Plaintiff noted that Dr. Renzi found that Plaintiff exhibited significant difficulty with both verbal and visual/spatial skills, has limited memory and concentration, and was diagnosed with learning disorder, oppositional defiant disorder, and depressive disorder. (Doc. 14 at 12 (citing Tr. at 309-14)). Plaintiff further noted that Dr. Rawlings found that Plaintiff demonstrated weak visual working memory, has impaired cognitive awareness and cognitive ability such that Plaintiff may have difficulty controlling his emotions interacting with coworkers and the public, and may have difficulty meeting industrial production standards. (*Id.* (citing Tr. at 210-23)).

Upon review, however, it is clear that the ALJ considered the limitations and diagnoses from the 2010 opinions, yet found that later opinions from 2011 and 2014 were more representative of Plaintiff's condition. (*See* Tr. at 25). For instance, the ALJ specifically considered the 2010 opinions in reviewing Plaintiff's mental impairments for the RFC. (Tr. at 25). The ALJ noted, however, that later intelligence testing from 2011 and 2014 showed improvement. (Tr. at 25). Moreover, the ALJ found that despite Plaintiff's mental limitations, Plaintiff "demonstrated a wide range of aptitudes which show that he functions at a higher level

than alleged." (Tr. at 26). The ALJ noted that Plaintiff had successfully traveled out of state, gets around town by riding a bicycle, can complete simple tasks, and is currently working part-time. (Tr. at 26). These findings provide substantial evidence in support of the ALJ's RFC determination. Thus, even if the ALJ had stated the weight to the 2010 opinions, it is clear that he based his RFC findings on later, more representative information of record. Furthermore, the Court notes that the mere existence of an impairment does not reveal the extent to which it limits Plaintiff's ability to work nor does its existence undermine the ALJ's determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (stating that the "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work"). Accordingly, Plaintiff has not shown how stating the specific weight given to the 2010 opinions contradicts the ALJ's ultimate findings as to Plaintiff's RFC. *See Denomme*, 518 F. App'x at 877-78.

Upon review, although the ALJ incorrectly applied the regulations by not stating the specific weight given to the 2010 opinions of Dr. Renzi and Dr. Rawlings, that error was harmless because Plaintiff has not shown that a correct application of the regulations would have affected the ALJ's ultimate findings as to Plaintiff's disability. *See Denomme*, 518 F. App'x at 877-78. The Court, therefore, affirms the ALJ's decision as to the 2010 opinions. *See Denomme*, 518 F. App'x at 877-78.

2.      *The 2014 opinion of Dr. Rawlings*

Plaintiff objects to the 2014 opinion of Dr. Rawlings for different reasons than the 2010 opinions. For this opinion, Plaintiff concedes that the ALJ "stated the weight afforded Dr. Rawlings' February, 2014, Social Security medical source statement." (Doc. 14 at 13 (citing Tr. at 443-444)). Instead, Plaintiff argues that the ALJ failed to state "the evidentiary weight he

granted Dr. Rawlings' narrative opinion of the claimant's mental condition and functioning."
(*Id.* (citing Tr. at 428-442)).  Plaintiff argues that "Dr. Rawlings provided two distinct pieces of
evidence that both fit the requirements of a Social Security medical opinion" and, as a result,
both "needed to be considered and explicitly given weight in the hearing decision by the ALJ."
(*Id.*).  Plaintiff argues that this failure was not without error because "Dr. Rawlings' narrative
opinion provided exceptionally greater detail and different functional limitations than described
in the Social Security form."  (*Id.* at 14 (citing Tr. at 428-442)).  Thus, Plaintiff argues that this
this case must be remanded for further review.  (*Id.*).

Defendant disagrees, arguing that substantial evidence supports the ALJ's evaluation of
Dr. Rawlings' 2014 opinion.  (Doc. 18 at 14).  While the ALJ did not specifically assign weight
to all of Dr. Rawlings' statements in his narrative opinion, Defendant argues that the ALJ was
not required to "specifically refer to every piece of evidence in his decision."  (*Id.* at 15 (*Dyer v.
Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Defendant argues that "[n]o remand is
warranted for the ALJ to specifically assign weight to opinions of a non-treating psychologist
that do not conflict with his decision."  (*Id.*).

In this instance, the Court agrees with Defendant.  As an initial matter, in giving weight
to Dr. Rawlings 2014 opinion, the ALJ cited to Exhibit 12F.  (Tr. at 26).  The record shows that
*both* the medical source statement (Tr. at 443-45) and the narrative opinion (Tr. at 428-42) were
part of Exhibit 12F.  (Tr. at 428-45).  Upon review, it appears to the Court that Exhibit 12F
constitutes a single holistic medical opinion by Dr. Rawlings.  Both the narrative opinion (Tr. at
428-42) and the medical source statement (Tr. at 443-45) appear to have been completed and
submitted at the same time—both are dated February 26, 2014.  (Tr. at 428, 445).  Moreover, the

12

narrative opinion (Tr. at 428-42) and the medical source statement (Tr. at 443-45) appear to be consistent and related.  (*See id.*).

The Court notes that the ALJ's requirement is to state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  The ALJ is not, however, required to specifically refer to every piece of evidence in his decision.  *Dyer*, 395 F.3d at 1211.  Here, it appears that the ALJ properly followed the regulatory requirements.  Specifically, the ALJ stated that he gave Dr. Rawlings' 2014 opinion significant weight, and the ALJ articulated reasons for giving Dr. Rawlings' 2014 opinion such weight.  (Tr. at 26).  Moreover, there is no error caused by the ALJ failing to specifically reference every part of the Dr. Rawlings' 2014 opinion in explaining the weight given to that opinion.  *See Dyer*, 395 F.3d at 1211.

Plaintiff cites *Winschel* in support of his contention that both the narrative opinion (Tr. at 428-42) and the medical source statement (Tr. at 443-45) must be considered and weighed separately.  There, the court determined that the treating physician's treatment notes constituted a separate medical opinion.  *Winschel*, 631 F.3d at 1179.  The court found that "[t]he ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight,'" nor did the ALJ "discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered."  *Id.*  The court reversed and remanded the case for further review.  *Id.*

Unlike in *Winschel*, however, Dr. Rawlings is not Plaintiff's treating physician.  Thus, no special deference to his opinion is required.  *See Denomme*, 518 F. App'x at 877-78.  Moreover, it is clear to the Court that, unlike *Winschel*, the ALJ considered *both* the narrative opinion (Tr. at 428-42) and the medical source statement (Tr. at 443-45) included in Exhibit 12F.  For instance,

at step two, the ALJ summarized the narrative portion of Dr. Rawlings' 2014 opinion.  (Tr. at 21-22).  The ALJ noted that Dr. Rawlings diagnosed Plaintiff with cognitive disorder, disorder of written expression, ADHD, and history of bipolar disorder.  (Tr. at 22).  The ALJ specifically found that all of these conditions were severe.  (Tr. at 20).  In fact, the Court notes that the diagnosis "Disorder of Written Expression" does not appear anywhere else in the record except in Dr. Rawlings' 2014 narrative opinion.  (Tr. at 439).  Thus, unlike *Winschel*, the ALJ discussed pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions clearly reflect that those elements were considered.  *See Winschel*, 631 F.3d at 1179.  Accordingly, even if the ALJ should have given separate weight to the narrative opinion and the medical source statement, *Winschel* is inapplicable to Plaintiff's case.

Furthermore, even if the ALJ erred in failing to give separate weight to Dr. Rawlings' narrative opinion, the Court finds that this error is harmless because there is no indication that giving specific weight to Dr. Rawlings 2014 narrative opinion would have contradicted the ALJ's ultimate findings.  *See Denomme*, 518 F. App'x at 877-78.  Specifically, the Court finds that the evidence of record, considered as a whole, provides substantial evidence in support of the ALJ's findings as to the nonexertional limitations included in Plaintiff's RFC.  *See Foote*, 67 F.3d at 1560.

The ALJ gave Dr. Rawlings' 2014 opinion significant weight and stated various reasons for giving the opinion such weight.  (Tr. at 26).  The ALJ stated that Dr. Rawlings' opinion was "largely consistent with the medical record as a whole" and that it was "the most recent evidence concerning the claimant's abilities which shows that the claimant retains the ability to handle simple instructions, is limited in working with others, and may not handle abrupt change well." (Tr. at 26).  A review of Plaintiff's RFC shows that the ALJ indeed addressed issues identified

by Dr. Rawlings' 2014 opinion, including Plaintiff's issues with attention, memory, learning, concentration, interacting with others, and productivity. (*See* Tr. at 24).

While Plaintiff contends that Dr. Rawlings included a "need for a supervised living arrangement" – thereby suggesting "far greater limitations in activities of daily life at home or limitations at work than indicated by the ALJ's limitation to only occasional supervision" – the Court finds that substantial evidence of record supports the ALJ's RFC finding. Specifically, the ALJ noted that Plaintiff had successfully traveled out of state, gets around town by riding a bicycle, can complete simple tasks, and is currently working part-time. (Tr. at 26). These findings provide substantial evidence supporting the ALJ's RFC finding that Plaintiff "is limited to work where he is working alone with only occasional supervision." (Tr. at 24). Moreover, based on these separate findings, there is no indication that the ALJ's ultimate findings would have been different if the ALJ gave specific weight to Dr. Rawlings' 2014 narrative opinion. *See Denomme*, 518 F. App'x at 877-78. Plaintiff has not shown that any different RFC finding is warranted.

Plaintiff also argues that "the VE testified that additional limitations such as occasional assistance in completing simple and routine tasks would preclude work." (Doc. 14 (citing Tr. at 505-506)). Nevertheless, the ALJ's other findings – such as noting that Plaintiff successfully traveled out of state, gets around town by riding a bicycle, can complete simple tasks, and is currently working part-time – belie Plaintiff's contention that he requires occasional assistance completing simple and routine tasks. (Tr. at 26). In considering the record as a whole, the Court finds that the evidence of record provides substantial evidence in support of the ALJ's RFC finding. *See Foote*, 67 F.3d at 1560.

In sum, it does not appear that the ALJ incorrectly applied the regulations as to Dr. Rawlings' 2014 opinion.  Nonetheless, even if the ALJ did err, any error was harmless because Plaintiff has not shown that a correct application of the regulations would have affected the ALJ's ultimate findings.  *See Denomme*, 518 F. App'x at 877-78.  The ALJ's decision will, therefore, stand as to Dr. Rawlings' 2014 opinion.  *See Denomme*, 518 F. App'x at 877-78.

### B.      The ALJ's Step Five Analysis

The Court next addresses Plaintiff's contention that the ALJ erred at step five of the sequential evaluation.  (Doc. 14 at 10-11).  Plaintiff argues that the ALJ did not comply with Social Security Ruling ("SSR") 00-4p because the ALJ did not elicit a reasonable explanation for the conflict between the VE's testimony and the DOT.  (*Id.* at 11).

Upon review, however, the Court notes that even if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the Eleventh Circuit has held that the "VE's testimony trumps the DOT."  *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("*Jones I*").  In *Jones I*, the Eleventh Circuit affirmed the ALJ's decision even though the claimant argued that the VE's testimony conflicted with the DOT.  *Id.*  The court held that when the DOT and VE's testimony conflict, "the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of admissible information concerning jobs.'"  *Id.* (citations omitted). The court held that "[d]ue to the significance of the VE's testimony . . . an ALJ may rely solely on the VE's testimony."  *Id.*  Accordingly, the court found that the ALJ's decision was supported by substantial evidence when the ALJ relied on the VE's testimony, which stated that there were jobs that the claimant could perform within her limitations.  *Id.*

Plaintiff cites to SSR 00-4p, a Social Security Ruling that was promulgated after *Jones I*, in support of her position.  (Doc. 14 at 11).  SSR 00-4p requires an ALJ to "elicit a reasonable

explanation" for a conflict between the VE's testimony and the DOT before relying on the VE's testimony.  2000 WL 1898704, at *2.

*Jones v. Commissioner of Social Security*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011) ("*Jones II*"), addresses this issue.  In *Jones II*, the Eleventh Circuit affirmed the ALJ's decision when the claimant argued that the DOT and VE's testimony conflicted in violation of SSR 00-4p.  *Id.* at 939.  The court, citing *Jones I*, stated that "[i]n this Circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent."  *Id.*  The court explained that it is not bound by Social Security Rulings.  *Id.* at 939 n.4.  As such, the court held that "[t]o the extent SSR 00-4p conflicts with [*Jones I*], we are bound by [*Jones I*]."  *Id.*  Thus, the court held that "[t]he ALJ was permitted to base his findings . . . *exclusively* on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation."  *Id.* at 939 (emphasis added).

Applying that standard here, even if the VE's testimony was inconsistent with the DOT, this Court is bound by *Jones I*, not SSR 00-4p.  *See Jones II*, 423 F. App'x at 939 n.4.  In this Circuit, the VE's testimony "trumps" the DOT where the two contradict.  *See Jones I*, 190 F.3d at 1228.  Moreover, an ALJ is permitted to rely *exclusively* on the VE's testimony in making determinations at step five.  *Id.*  Accordingly, even if the VE's testimony and the DOT contradict, the Court finds that the ALJ's decision is supported by substantial evidence because the ALJ may rely *solely* on the VE's testimony.  *See Jones II*, 423 F. App'x at 939 n.4.  Thus, the ALJ properly relied on the VE's testimony in finding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 28).  The ALJ was not required to seek further explanation.  *See Jones II*, 423 F. App'x at 939 n.4.  The ALJ's decision on this ground is, therefore, affirmed.

### C.    Plaintiff's Cross-Examination of the Vocational Expert

Plaintiff contends that the ALJ erred at step five because he refused to allow the cross-examination of the VE.  (Doc. 14 at 8-10).  Plaintiff argues that this left "an evidentiary gap" causing prejudice to Plaintiff.  (*Id.* at 10).

Defendant disagrees, arguing that the ALJ only "interjected to tell the VE he was not required to answer questions regarding the methodology . . . because the ALJ found such questions immaterial."  (Doc. 18 at 21).  Defendant argues that "[a]fter the ALJ explained that he found those questions immaterial, Plaintiff's counsel did not raise any objection and declined to ask further questions."  (*Id.* (citing Tr. at 507)).  Defendant further states that "Plaintiff does not explain what additional evidence would have been adduced through additional questions about the workings of that same methodology."  (*Id.*).  As a result, Defendant argues that Plaintiff has not shown any evidentiary gaps in this case.  (*Id.* at 22).

The Court notes that even though the ALJ has a duty to develop the record, a plaintiff must show prejudice before a court will find that a plaintiff's "right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record."  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).  To determine if prejudice exists, the Court must determine if the record contains evidentiary gaps, which will result in unfairness or clear prejudice.  *Id.* (citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).  A court must keep in mind that it must affirm an ALJ's decision if there exists "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178).

In this case, there is no evidence of prejudice to Plaintiff. Specifically, at the hearing, the ALJ asked Plaintiff's counsel whether he had any objection to the VE testifying. (Tr. at 503). In response, Plaintiff's counsel stated:

> ATTY: I don't believe that I have any conflict with Mr. Maselle, or with the claimant, and I don't have any issues with Mr. Maselle testifying regarding past work, or work that could be performed in the national economy pursuant to the DOT.
>
> But I would object to the calculation and methodology used in determining the numbers of jobs that would be present in the national economy.

(Tr. at 503).

On cross-examination of the VE, Plaintiff's counsel questioned the VE on his methodology in determining the numbers of jobs that would be present in the national economy. (Tr. at 506). Counsel asked:

> Q: And your answers to the first and second hypothetical, would you be so kind as to provide us with the methodology in calculating those numbers?
>
> A: Yes. I utilize a 2012 Employment Statistics Quarterly, the second quarter. And I'm not exactly sure how their methodology works but I believe that they – you know, that they divide the –

(Tr. at 506). The ALJ abruptly interjected, stating:

> ALJ: No. You don't have to do that. That's the source you relied upon?
>
> VE: Yes.
>
> ALJ: Okay. That's the source commonly relied upon by experts in your profession?
>
> VE: Yes.
>
> ATTY: And are you aware if those numbers include seasonal or part time employment?
>
> ALJ: If – those are the numbers you relied on –
>
> VE: Yes.

ALJ:  – that are commonly relied upon?

VE:  I'd say yes.

ALJ:  Okay.

ATTY:  Judge, are you instructing Mr. Maselle not to answer the question?

ALJ:  I'm instructing him that that's not required.  If those are the numbers that customarily are relied upon by professionals and other vocational experts, and if those are not – they're not readily broken down in that source, and they're relied upon by vocational experts, yes, I'm saying that it's not relevant or material here.

ATTY:  Okay.  Thank you.  Then I have no further questions.

(Tr. at 507).

Upon review, the Court notes that an ALJ "may ask the witness any questions material to the issues and will allow the parties or their designated representatives to do so."  20 C.F.R. § 416.1450.  Here, it is clear that the ALJ stated *on the record* that the line of questioning by Plaintiff's counsel was not relevant or *material*.  (Tr. at 507).  Although Plaintiff's counsel previously stated that he objected "to the calculation and methodology used in determining the numbers of jobs that would be present in the national economy," Defendant is correct that after the ALJ found those questions to be immaterial, Plaintiff's counsel did not object nor did he ask any further questions.  (Doc. 18 at 21).  Instead, when the time came for Plaintiff to explain why he was objecting on that ground, Plaintiff's counsel did not challenge the ALJ nor did he explain or attempt to explain why the line of questioning was relevant or material.  Plaintiff's failure to challenge the ALJ on this point undermines his argument that there was gap in the evidence.  Plaintiff had the opportunity to address the relevance and/or materiality of such questioning at the hearing, yet he declined to do so.

Even on review here, Plaintiff has not shown what additional information Plaintiff would have sought from the VE at the hearing.  Specifically, Plaintiff has not shown that this line of questioning would have had any impact of the ALJ's ultimate conclusion that there are significant numbers of jobs existing in the national economy that Plaintiff can perform. Plaintiff's mere assertion that his rights were violated is not enough to establish an evidentiary gap.  The Court, therefore, affirms the decision of the Commissioner on this ground.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 20, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties